IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

UNITED STATES OF AMERICA )
)
v. ) Criminal Action No. 3:18cr61–HEH
)
REVARDO DARNELL WHITE, )
)
Defendant. )

## MEMORANDUM OPINION
### (Denying Defendant's Motion for Compassionate Release)

This matter is before the Court on Revardo Darnell White's ("Defendant") Motion

for Compassionate Release Pursuant to Section 603 of the First Step Act: 18 U.S.C.

§ 3582(c)(1)(A) (as amended), filed on May 27, 2020 (ECF No. 48).[1] Defendant seeks to

serve the remainder of his sentence on home confinement, in light of his medical

conditions and the threat posed by the novel coronavirus ("COVID-19"). Defendant and

the Government have filed memoranda supporting their respective positions, and

Defendant's Motion is ripe for this Court's review. The Court will dispense with oral

argument because the facts and legal contentions have been adequately presented to the

Court, and oral argument would not aid in the decisional process. *See* E.D. Va. Local

Crim. R. 47(J). For the reasons that follow, the Court will deny Defendant's Motion.

---

[1] Defendant initially filed a Motion Pursuant to Section 603 of the First Step Act Re-Entry
Initiative Reauthorization; Modification of Imposed Term of Imprisonment on March 31, 2020
(ECF No. 45). In an April 30, 2020 Order, this Court construed said Motion as Defendant's *pro
se* Motion Pursuant to Section 603 of the First Step Act of 2018 and ordered the Clerk to appoint
the Federal Public Defender to represent Defendant (ECF No. 46). Defendant's counsel filed the
Motion now before the Court.

On December 27, 2017, surveillance video at a Nation Motors Auto Lot in Richmond, Virginia captured Defendant and his uncle entering the business, where his uncle previously worked, and then leaving shortly thereafter. Defendant returned alone several hours later, at which point he was wearing a mask and carrying a loaded firearm. Defendant demanded money from the company's safe, but ultimately left before successfully obtaining any cash. Two days later, Defendant was arrested, and the firearm and ammunition were recovered from a search of his uncle's home that followed.

Defendant was subsequently charged and pleaded guilty to possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g), and attempted robbery affecting commerce ("Hobbs Act robbery"), in violation of 18 U.S.C. § 1951. On January 29, 2019, the Probation Officer filed his Presentence Investigation Report, which calculated the guideline range for Defendant's convictions to be 57 to 71 months' imprisonment, followed by one to three years of supervised release, based upon an offense level of 23 and a Criminal History Category III. (ECF No. 34 at 16.)

On February 15, 2019, Defendant appeared before this Court for sentencing (ECF No. 40). After considering the parties' arguments, the Court denied the Government's motion for an upward variance, but imposed a sentence of 71 months' imprisonment—a sentence at the high-end of Defendant's guideline range—followed by three years of supervised release. Notably, the Court recommended that Defendant be designated to FMC Butner for psychological, mental, and physical treatment; participate in educational training; and be designated to FCI Petersburg upon his release from FMC Butner. (J.

at 2.) Thus, the Defendant began his sentence at FMC Butner and has since been transferred to FCI Petersburg Low.

In March of 2020, the first cases of COVID-19 emerged in the United States. Shortly thereafter, some institutions in the federal prison system became affected. As a result, Defendant now seeks compassionate release pursuant to § 3582(c)(1)(A)(i).

"'A judgment of conviction that includes a sentence of imprisonment constitutes a final judgment' and may not be modified by a district court except in limited circumstances." *Dillon v. United States*, 560 U.S. 817, 824 (2010) (alterations omitted) (quoting 18 U.S.C. § 3582(b)). This Court has no inherent authority to modify a defendant's term of imprisonment once it has become final; rather, Congress must grant this Court the power to do so. *See United States v. Goodwyn*, 596 F.3d 233, 235 (4th Cir. 2010) (quoting *United States v. Cunningham*, 554 F.3d 703, 708 (7th Cir. 2009)). Accordingly, this Court "'may not modify a term of imprisonment once it has been imposed' unless the Bureau of Prisons moves for a reduction, the Sentencing Commission amends the applicable Guidelines range, or another statute or Rule 35 *expressly* permits the court to do so." *Id.* (emphasis in original) (quoting § 3582(c)).

As amended by the First Step Act, § 3582(c)(1)(A) authorizes courts to modify a criminal defendant's sentence on grounds of compassionate release under two circumstances. Such a request must come before the court either: (1) "upon motion of the Director of the Bureau of Prisons;" or (2) "upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the

3

receipt of such a request by the warden of the defendant's facility, whichever is earlier, . . . ." § 3582(c)(1)(A). Thus, it appears to this Court that the import of § 3582(c)(1)(A) is that any exercise of a court's adjudicatory authority must come second to some form of review by the Bureau of Prisons.

Indeed, Congress specifically directed that the Bureau of Prisons first confront the issue.

> [I]t appears that under the plain language of the statute, Congress intended that the [Bureau of Prisons] have an opportunity to evaluate and act on a prisoner's motion *before* the Court would be given jurisdiction over such a motion. It did not intend to supplant an agency-exclusive process with an entirely judicial process; it intended to provide a district court with jurisdiction to reduce a sentence without agency action *only if* the agency fails to act within 30 days.

*United States v. Smith*, No. 2:18CR96, ECF No. 39 at 6 (emphasis in original). Furthermore, the Court agrees with the Government that Congress has spoken on this issue during the pandemic and broadened *only* the power of the Bureau of Prisons—not the authority of the courts—when it amended 18 U.S.C. § 3624(c)(2). *See* CARES Act, Pub. L. No. 116-136, § 12003(b)(2), 134 Stat. 281 (2020); *cf. United States v. Alam*, _ F.3d _, 2020 WL 2845694, at *5 (6th Cir. June 2, 2020) ("[T]he Attorney General has instructed the Bureau of Prisons to make the most of this expanded power by placing in home confinement 'all inmates whom [the Bureau] deem[s] suitable candidates.'" (quoting *Increasing Use of Home Confinement at Institutions Most Affected by COVID-19*, Office of the Attorney General (Apr. 3, 2020))). Had Congress wished to amend § 3582(c)(1)(A), or been concerned about courts' interpretations of the statute, it could have similarly altered the requirements in § 3582(c)(1)(A) to permit a greater breadth of

judicial action. Again, because Congress circumscribed the scope of the courts' power, this Court may not traverse those lines.

Whether these requirements present a jurisdictional bar or are mandatory claim-processing rules, however, does not alter the result in the immediate case. The Government has unequivocally raised Defendant's failures to exhaust his administrative rights of appeal and to wait thirty days from the Warden's receipt of his request before filing his Motions. (Gov't Mem. Supp. Mot. at 10–23.) Therefore, the principal issue in the case at bar is whether the § 3582(c)(1)(A) requirements may be excused. This Court finds that they may not.

Even if the requirements constitute mandatory claim-processing rules, which bind courts only when they are properly asserted and not forfeited, *see Alam*, 2020 WL 2845694, at *2, the language of § 3582(c)(1)(A) insists that courts may become involved in modifying a defendant's sentence only under the circumstances provided. Otherwise—without satisfaction of the limited exceptions enumerated in § 3582(c)(1)(A)—it remains the case that "[t]he court *may not* modify a term of imprisonment once it has been imposed." § 3582(c) (emphasis added); *see Ross v. Blake*, 136 S. Ct. 1850, 1856 (2016) (explaining that "may not" and "shall" are examples of "mandatory" language). "[M]andatory language means a court may not excuse a failure to exhaust . . . ." *See id.* (reversing the Fourth Circuit's decision and agreeing largely with the principles expounded upon in Judge Agee's dissent). It should not be assumed that Congress used such mandatory language flippantly as it could have used permissive language had it wished to do so. Therefore, a reading of the plain language of the statute

makes clear to this Court that—regardless of whether these requirements constitute

mandatory claim-processing rules or a jurisdictional bar—the requirements of

§ 3582(c)(1)(A) must be met prior to this Court's adjudication of Defendant's Motions.[2]

Significant practical considerations also bolster this common sense reading of

§ 3582(c)(1)(A). Not only does such a reading provide a bright line rule for the

adjudication of these matters, but

> [p]reventing prisoners from charging straight to federal court [also] serves
> important purposes. It ensures that the prison administrators can prioritize
> the most urgent claims. And it ensures that they can investigate the gravity
> of the conditions supporting compassionate release and the likelihood that
> the conditions will persist. These are not interests we should lightly dismiss
> or re-prioritize.

*Alam*, 2020 WL 2845694, at *4. By structuring review in this way, Congress has

protected the expenditure of judicial resources.

Most courts in this Circuit are also in agreement that, prior to asking a court to

modify a sentence in light of COVID-19, defendants are required by § 3582(c)(1)(A) to

satisfy one of the statutory exceptions enumerated. *See, e.g., United States v. Feiling*,

No. 3:19-cr-112–DJN, 2020 WL 1821457, at *5 (E.D Va. Apr. 10, 2020) (collecting

cases); *United States v. Dungee*, No. 7:15-cr-00005, 2020 WL 1666470 (W.D. Va.

Apr. 4, 2020); *United States v. Edwards*, No. 6:17-cr-00003, 2020 WL 1650406 (W.D.

Va. Apr. 2, 2020); *United States v. Oliver*, No. JKB-16-0485, 2020 WL 1505899 (D. Md.

---

[2] Although outside the context of COVID-19, the Fourth Circuit has similarly suggested that
these requirements must be satisfied prior to any determination of a defendant's motion for
compassionate release on the merits. *See United States v. Galloway*, No. 2:10-cr-96-2–MSD–
TEM, ECF No. 434 (E.D. Va. June 10, 2019) (denying motion for compassionate release after
"assuming, without deciding, that Defendant [had] fully exhausted his administrative rights"),
*aff'd*, No. 19-6952 (4th Cir. Jan. 22, 2020) (unpublished).

6

Mar. 30, 2020). *But see United States v. Poulios*, No. 2:09-cr-109–RAJ, 2020 WL

1922775 (E.D. Va. Apr. 21, 2020) (waiving the exhaustion requirement for a defendant

seeking compassionate release due to COVID-19 based upon a finding that not doing so

would be futile, and result in inadequate relief and undue prejudice to the defendant);

*United States v. Jones*, No. 3:11-cr-249–MHL, ECF No. 47 (same). The United States

Court of Appeals for the Third and Sixth Circuits have similarly so held. *See Alam*, 2020

WL 2845694, at *2, 4 (finding the requirements specified in § 3582(c)(1)(A) constitute

mandatory claim-processing rules); *United States v. Raia*, 954 F.3d 594 (3d Cir. 2020)

(indicating that the requirements specified in § 3582(c)(1)(A) are jurisdictional).

   In this case, the Bureau of Prisons has not made a motion on Defendant's behalf.

Instead, Defendant filed his own Motions, seeking judicial relief, on March 31, 2020 *pro

se*, and on May 27, 2020 through counsel. In addition, Defendant submitted his request

to the Warden of FCI Petersburg on May 14, 2020, which the Warden subsequently

denied. (*See* Def.'s Mem. Supp. Mot. [hereinafter Def.'s Mem.] at 3, ECF No. 48.)

Thus, for this Court to adjudicate this matter, it must be the case either that Defendant

filed his Motions after exhausting his administrative remedies or that thirty days have

lapsed since Defendant submitted his request to the Warden. Defendant has not appealed

the Warden's denial.

   Although *over* thirty days have now lapsed from the Warden's receipt of his

request, it is unclear to this Court whether "lapse," as used in § 3582(c)(1)(A), means

simply the passage of thirty days or refers to a warden's failure to act upon a defendant's

request within thirty days.[3]  However, as Defendant fails to present extraordinary and

compelling reasons justifying his release on home confinement, this Court finds that it

need not determine whether its exercise of jurisdiction would be proper here.  This Court

will thus refrain from making a definitive finding on the issue of jurisdiction and will

await the inevitable interpretation of the terms of § 3582(c) by a higher court.

    Where a defendant satisfies one of the preconditions enumerated by the statute—

that is, a defendant exhausts his administrative remedies or thirty days lapse following the

warden's receipt of a defendant's request—§ 3582(c)(1)(A)(i) permits a court to modify a

defendant's sentence when "extraordinary and compelling reasons warrant such a

reduction."[4]  In so doing, a court must consider the factors set forth in 18 U.S.C.

§ 3553(a).  § 3582(c)(1)(A).  In the context of COVID-19, courts have suggested that,

where a defendant can show both a particularized susceptibility and a particularized risk

of contracting the coronavirus, they may grant motions for compassionate release based

---

[3] Furthermore, although thirty days have lapsed, neither of Defendant's Motions was filed after the lapse of thirty days from the Warden's receipt of Defendant's request.  Thus, even if "lapse" as used in § 3582(c)(1)(A) refers merely to the passage of thirty days, Defendant has not complied with this provision of the statute.  Moreover, the Court believes it would be inappropriate to review Defendant's untimely Motions because, "[i]f (rather than dismissing) [the Court] sat on untimely compassionate release motions until the 30-day window ran its course, [it] could end up reviewing stale motions." *See Alam*, 2020 WL 2845694, at *5.

[4] The Court may also grant such a modification if it finds that the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community.  § 3582(c)(1)(A)(ii).  However, this provision is inapplicable here as Defendant does not appear to seek relief under this provision.

upon a defendant's medical conditions.[5] *See Dungee*, 2020 WL 1666470, at *2;

*Edwards*, 2020 WL 1650406, at *5. Additionally, the age of the defendant and his family

circumstances are also pertinent to the determination of whether extraordinary and

compelling circumstances exist that justify a modification of a defendant's sentence. *See*

*Feiling*, 2020 WL 1821457, at *8; *see also United States v. Hill*, No. 4:13-cr-28-BR, ECF

No. 199 at 2–3 (E.D.N.C. Jan. 13, 2020) (citing U.S.S.G. § 1B1.13, Commentary 1(A)–

(D) (identifying four categories of criteria for compassionate release)), *aff'd*, No. 20-6126

(4th Cir. June 16, 2020) (unpublished).

However, courts across the country have declined to grant such a motion where a

defendant merely demonstrates a fear of contracting COVID-19. *See Raia*, 954 F.3d at

597; *Wilson v. United States*, 2:11-cr-180(5), 2020 WL 3315995, at *3 (E.D. Va. June 18,

2020); *Feiling*, 2020 WL 1821457, at *7; *United States v. Clark*, 17-85-SDD-RLB, 2020

---

[5] Where such a motion is submitted to a court by the Bureau of Prisons, this notion is further
supported by policy statements under the United States Sentencing Guidelines. *See*
§ 3582(c)(1)(A) (providing that reductions under this Section must be "consistent with applicable
policy statements issued by the Sentencing Commission"). The Commentary to U.S.S.G.
§ 1B1.13 provides that extraordinary and compelling reasons exist to support compassionate
release for a defendant based on his medical condition where "the defendant is suffering from a
terminal illness," "suffering from a serious physical or medical condition," "suffering from a
serious functional or cognitive impairment," or "experiencing deteriorating physical or mental
health because of the aging process." U.S.S.G. § 1B1.13, Commentary (1)(A). It further
provides that the defendant's medical condition must be one that "substantially diminishes the
ability of the defendant to provide self-care within the environment of a correctional facility and
from which he or she is not expected to recover." *Id.* This Policy Statement and its Commentary
is not directly pertinent here, however, as this issue is before the Court on Defendant's—not the
Bureau of Prison's—Motion. U.S.S.G. § 1B1.13; U.S.S.G. § 1B1.13, Commentary (4); *see*
*Wilson v. United States*, 2:11-cr-180(5), 2020 WL 3315995, at *2 (E.D. Va. June 18, 2020)
("U.S.S.G. § 1B1.13 is merely advisory and does not bind the Court's application of
§ 3582(c)(1)(A)." (citing *McCoy v. United States*, No. 2:03-cr-197, 2020 WL 2738225, at *4
(E.D. Va. May 26, 2020)).

WL 1557397 (M.D. La. Apr. 1, 2020); *United States v. Zywotko*, No. 2:19-cr-113-FtM-60NPM, 2020 WL 1492900, (M.D. Fla. Mar. 27, 2020); *United States v. Eberhart*, No. 13-cr-00313-PJH-1, 2020 WL 1450745 (N.D. Cal. Mar. 25, 2020); *United States v. Gileno*, No. 3:19-cr-161-(VAB)-1, 2020 WL 1307108 (D. Conn. Mar. 19, 2020).

Based upon the foregoing principles, even if the Court had the authority to address Defendant's Motions, Defendant fails to present extraordinary and compelling reasons for his release on home confinement. Defendant lists several medical conditions in support of his contention that he is particularly susceptible to COVID-19, including: Hepatitis C, asthma, Type II diabetes, hypertension, and decreased liver function. (Def.'s Mem. at 23.) However—while the Court does not downplay the severity of Defendant's medical conditions[6]—it finds that his particularized susceptibility is not sufficient as he fails to also demonstrate a particularized risk of contracting COVID-19.

At FCI Petersburg Low, where Defendant is currently incarcerated, there is no evidence of the pandemic aside from the report of a single staff member testing positive, who has fully recovered.[7] *See* Fed. Bureau of Prisons, *COVID-19 Coronavirus* (June 23, 2020), www.bop.gov/coronavirus/ (showing no cases of COVID-19 among inmates or

---

[6] Indeed, several of his conditions place him in the "at risk" population. *See* Centers for Disease Control and Prevention, *Coronavirus Disease 2019 (COVID-19): People Who Are at Higher Risk for Severe Illness* (June 18, 2020), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html.

[7] The Court is aware that Defendant began his sentence at FMC Butner. (Def.'s Mem. at 7.) However, given that Defendant has been housed at FCI Petersburg Low since the confirmation of the first cases of COVID-19 in the United States, *see id.* (indicating that Defendant was transferred to FCI Petersburg Low on November 21, 2019), the Court does not feel it appropriate to take into consideration the severity of the spread of the virus at FMC Butner as Defendant was not incarcerated there during the height of the pandemic in the United States.

10

staff at FCI Petersburg Low aside from the fact that one staff member has recovered).

Thus, Defendant's request for release on home confinement is based upon nothing more

than "the mere possibility that COVID-19 will spread to his facility"—a fear that is

insufficient to justify release. *Feiling*, 2020 WL 1821457, at \*7; *see Raia*, 954 F.3d at

597 ("[T]he mere existence of COVID-19 in society and the possibility that it may spread

to a particular prison alone cannot independently justify compassionate release.").[8]

Furthermore, it is not clear to this Court that Defendant would be safer from the

virus on home confinement. As it stands now, the number of cases in Richmond,

Virginia—where Defendant would be released on home confinement—far exceeds the

number of cases in Petersburg, Virginia. *Compare* Virginia Department of Health,

*COVID-19 Cases in Virginia* (June 23, 2020), www.vdh.virginia.gov/coronavirus/ (the

total number of cases in Petersburg, Virginia is 201), *with id.* (the total number of cases

in Richmond, Virginia is 2,031). This is not to mention the risks it would impose upon

the Defendant's family members, particularly his 77-year-old mother, who has offered to

house him upon his release despite her own medical problems. *See Feiling*, 2020 WL

1821457, at \*8 (explaining that a defendant's family members would be subject to

compounded risks because they would likely have to provide for the defendant, which

---

[8] Although Defendant further contends that the nation's prison system is ill-equipped to handle COVID-19, the Court believes this allegation is undermined by the precautions and modifications taken by the Bureau of Prisons, *see* Fed. Bureau of Prisons, *A BOP COVID-19 Overview* (June 23, 2020), https://www.bop.gov/coronavirus/overview.jsp#bop_covid-19_response, as well as the ever-growing numbers of inmates who have recovered from COVID-19, *see generally* Fed. Bureau of Prisons, *COVID-19 Coronavirus* (June 23, 2020), www.bop.gov/coronavirus/. *But see Coleman v. United States*, No. 4:17-cr-69, 2020 WL 3039123, at \*3 (E.D. Va. June 4, 2020) (describing the Bureau of Prisons' errors in handling COVID-19).

requires venturing out into the community). Therefore, it appears to this Court that releasing the Defendant on home confinement is not a viable alternative sentence.

Finally, Defendant's release on home confinement also fails to satisfy the relevant § 3553(a) factors. Notably, Defendant has an extensive criminal record. He has numerous prior drug convictions, and previous periods of confinement evidently failed to provide Defendant with adequate deterrence before being convicted and sentenced in this Court. Moreover, even prior to the conviction at issue, Defendant developed an involvement in violent crime—sustaining convictions for petit larceny, breaking and entering, assault and strike, robbery, use of a firearm in connection with a felony, and assault and battery. Defendant's conviction before this Court shows a continuation of that streak. This behavior evidences Defendant's flagrant disrespect for the law and this Court's concern for the need to protect the public.

That the Defendant "faces the possibility of contracting a disease to which he [may be] vulnerable does not obviate these concerns," especially considering that he has served less than half of his 71-month sentence. *Feiling*, 2020 WL 1821457, at *8. Additionally, this Court maintains discretion under § 3582(c)(1)(A) to release Defendant. *See Hill*, No. 20-6126 (concluding that the district court did not abuse its discretion in denying defendant's motion for compassionate release (citing *United States v. Chambliss*, 948 F.3d 691, 693 (5th Cir. 2020))). Therefore, having considered the materials before the Court, Defendant's particularized risk and susceptibility to the virus, and the § 3553(a) factors—including the need to promote respect for the law, protect the public,

and provide for adequate deterrence—this Court finds no sufficient justification for releasing the Defendant on home confinement.

Based on the foregoing analysis, Defendant's Motion for Compassionate Release will be denied. Accordingly, Defendant's *pro se* Motion Pursuant to Section 603 of the First Step Act Re-Entry Initiative Reauthorization; Modification of Imposed Term of Imprisonment will also be denied as moot.

An appropriate Order will accompany this Memorandum Opinion.

/s/

Henry E. Hudson
Senior United States District Judge

Date: June 22, 2020
Richmond, Virginia